UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 18-cr-00194-01 |
| VERSUS | JUDGE FOOTE |
| THOMAS RAY BEAIRD | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

Thomas Ray Beaird ("Defendant") is charged with one count of making a false statement to a firearms dealer under 18 U.S.C. § 922(a)(6). Doc. 1. The charge arises out of Defendant's alleged attempted purchase of a handgun from a pawn shop in Shreveport. Id. When completing the ATF paperwork to purchase the gun, Defendant allegedly lied about whether he was subject to an order of protection, a fact that prohibited him from legally possessing a gun.

ATF agents wanted to speak to Defendant about his attempted purchase. They found him at CCC, where he was in jail on unrelated charges. The agents interviewed Defendant, and he made incriminating statements. Before the court is Defendant's Motion to Suppress (Doc. 18) his statements on the grounds they were not made voluntarily pursuant to Miranda v. Arizona, 384 U.S. 436 (1966). For the reasons that follow, it is recommended that Defendant's motion to suppress be denied.

**Relevant Facts**

An evidentiary hearing was held on November 1, 2018. The evidence at the hearing, including an audio recording of the interview in question, establishes the following facts. Defendant attempted to purchase a Ruger .380 pistol from Max's Pawn Shop in Shreveport. As part of the purchase process, Defendant filled out ATF paperwork which required him to disclose whether he was subject to a restraining or protective order. Defendant represented that he was not subject to such an order, but his purchase was rejected by the FBI's National Instant Criminal Background Check System ("NICS"). NICS then sent a referral of the matter to the ATF office in Shreveport.

ATF Special Agents Theresa Meza and Trenton Harper received the referral. They went to Caddo Correctional Center ("CCC"), where Defendant was detained on other charges, to serve Defendant with an ATF warning letter (Govt. Ex. 1). The letter advised Defendant why his purchase was denied, and it warned him against trying to buy other firearms. The agents testified that they attempt personal service of warning letters so that they can answer any questions the persons might have regarding why they are prohibited from purchasing a gun.

The agents were escorted by CCC guards to the pod where Defendant was housed. The agents spoke with another guard, who called for Defendant to come down from his cell to the first floor of the pod. The agents greeted Defendant, identified themselves as federal agents with ATF, and asked Defendant if they could speak with him regarding the NICS denial. The agents did not tell Defendant that he had to speak with them.

Defendant agreed to speak with the agents, and the three of them went into an attorney interview room for privacy. The room had glass windows all the way around it and a single door. Defendant was seated on the side of the table closest to the door and was not in handcuffs. Neither agent was armed during the interrogation; they surrendered their duty weapons when entering CCC.

In the interview room, the agents reintroduced themselves, told Defendant why they were there, showed him a copy of the ATF warning letter, and asked him whether it was okay for them to talk to him. Defendant responded that it was. At that point, the agents began recording the interview. Agent Meza asked Defendant questions such as whether he visited the pawn shop, whether he intended to buy a gun, and whether he had any other firearms. Defendant provided incriminating answers to some of the questions.

After three or so minutes, Agent Meza read Defendant his <u>Miranda</u> rights and gave him a statement of rights form and waiver. Govt. Ex. 2. Defendant paused to read and sign the waiver, and the interview continued. Agent Meza continued to ask Defendant questions regarding his attempted purchase of a firearm, and Defendant provided additional incriminating responses. None of the questions related to the reason for Defendant's existing and unrelated incarceration at CCC.

Defendant was cooperative and non-combative throughout the interview. The entire recorded conversation lasted approximately eight minutes. After the interview ended, Defendant was excused and he returned to the main area of his pod.

**Analysis**

The Fifth Amendment provides that "[n]o person shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. The Fifth Amendment, implemented by Miranda, protects an accused's right against self-incrimination by prohibiting unwarned custodial interrogations. United States v. Coleman, 610 Fed. Appx. 347, 352-53 (5th Cir. 2015). Under Miranda, a statement made by a person in custody is inadmissible unless that person was informed that he has the right to have an attorney present during questioning, the right to remain silent, and that anything that the person says may be used against him. Miranda, 384 U.S. at 444-45. Law enforcement is not permitted to circumvent the protections of Miranda by intentionally withholding Miranda warnings until after their interrogation has already succeeded in eliciting a confession. Missouri v. Seibert, 542 U.S. 600, 613 (2004); United States v. Hernandez, 200 Fed. Appx. 283, 286 (5th Cir. 2006).

An obligation to administer Miranda warnings attaches "only where there has been such a restriction on a person's freedom as to render him 'in custody.'" Stansbury v. California, 511 U.S. 318 (1994) (per curiam). An interrogation is considered "custodial" generally when a police officer or investigator has initiated questioning after a defendant has been deprived of his freedom of action in a significant manner. Miranda, 384 U.S. at 444. The defendant has the burden of proving that he was under arrest or in custody. United States v. Davis, 792 F.2d 1299, 1309 (5th Cir. 1986).

The Supreme Court has held that a determination of custody depends on the objective circumstances of the interrogation. Stansbury, 511 U.S. at 322. The standard is

whether a "reasonable person in the suspect's situation" would perceive himself to be in custody.  Yarborough v. Alvarado, 541 U.S. 652, 662 (2004).  This objective reasonableness inquiry has two components: (1) what where the circumstances surrounding the interrogation; and (2) given those circumstances, would a reasonable person have felt that they could terminate the questioning and leave.  Coleman, 610 Fed. Appx. at 353.  The determination depends on the "totality of the circumstances," and the Fifth Circuit has identified several relevant factors: (1) the length of the questioning; (2) the location of the questioning; (3) the accusatory, or non-accusatory, nature of the questioning; (4) the amount of restraint on the individual's physical movement; and (5) statements made by officers regarding the individual's freedom to move or leave.  Id.

A prison inmate is not automatically "in custody" for Miranda purposes.  United States v. Melancon, 2010 WL 324007, *18 (E.D. La. 2010), aff'd, 662 F.3d 708 (5th Cir. 2011).  An inmate is not "in custody" when there is no "added imposition on his freedom of movement" nor "any measure of compulsion above and beyond" imprisonment.  Id., at *21.  Whether an interrogated prisoner is in such custody is evaluated by the objective reasonableness standard, aided by the totality-of-the-circumstances analysis, while taking into account the already-limited freedoms of a prison inmate.  Id., *17-21.

Here, the totality of the circumstances of the ATF agents' questioning of Defendant leads to the conclusion that a reasonable person in Defendant's situation would not have perceived himself to be in the custody of the ATF agents.  Nothing in the record suggests that the agents placed any additional burden on Defendant's otherwise constrained freedom of movement within his pod at CCC.

The interview took place in an all-glass, unlocked interview room located inside Defendant's pod. Defendant was seated at the small table on the side closest to the door. The agents never told Defendant that he had to stay or answer their questions. While the agents did not tell Defendant that he was free to leave at any time, he would have been free to leave if he wished to do so. Only Defendant and the two agents were present during the questioning; no other officers were in the room. The entire interview lasted only eight minutes, and, as the audio recording shows, Defendant was cooperative and non-combative throughout.

Defendant was not arrested at the time of the interview. He was not charged with a crime related to the interview until nine days later. Just as he was before the agents arrived, Defendant was free at any time before, during, and after the interview to move freely around the cell block; thus, there was no "added imposition on his freedom of movement" during the interview. Based on the totality of the circumstances, a reasonable person in Defendant's situation would have known that he could terminate the questioning and leave.

With regard to the voluntariness of Defendant's statements generally, the totality of the evidence shows that his statements to the agents were freely and voluntarily made. The agents were very courteous and respectful towards Defendant. There was no coercion, no threats, and no intimidation. As explained above, Defendant readily spoke to the agents and was cooperative throughout the interview.

Accordingly;

It is recommended that Defendant's Motion to Suppress (Doc. 18) be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b)(2), parties aggrieved by this recommendation have **fourteen (14) days** from the date of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Crim. P. 45(b). A party may respond to another party's objections within **fourteen (14) days** from the filing of the objections. Counsel are directed to furnish a paper copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendation set forth above shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 14th day of 2018.

_____
Mark L. Hornsby
U.S. Magistrate Judge